# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY B. RUSSELL,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 14-4552** |
| **v.** | : | |
| | : | |
| **TRACY R. WILLIAMS** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 DECEMBER 9, 2020

## MEMORANDUM OPINION

**INTRODUCTION**

In nearly 400 paragraphs of allegations, the operative amended complaint filed by Plaintiffs Jeffrey Russell and Rosemary Russell (collectively, "Plaintiffs") against Defendant Tracy R. Williams ("Williams") and Defendants David M. Taffet and Sharon L. Taffet (collectively the "Taffets")[1] (collectively with Williams, "Defendants"), asserts state law claims for fraud, breach of fiduciary duty, breach of contract, and unjust enrichment.  In this lengthy pleading, Plaintiffs contend that Defendants engaged in a vast scheme to defraud Plaintiffs by inducing them to invest in an entity, Platypus Holdings LLC ("Platypus"), that turned out to be a sham enterprise run solely for Defendants' benefit.  Williams never responded to the operative complaint, and a default was entered against her.

Presently before this Court is Plaintiffs' motion for default judgment against Williams, to which Williams never responded.  For the reasons set forth below, Plaintiffs' motion is granted.

---

[1]     Notably, the Taffets filed for bankruptcy protection.  During the course of the bankruptcy proceedings, Plaintiffs settled their claims against the Taffets.  [*See* ECF 25].

**PROCEDURAL BACKGROUND**

The protracted procedural background of this matter is well-known to the parties and will not be set forth in its entirety. Briefly, Plaintiffs commenced this matter on July 31, 2014, by filing a complaint which asserted various state law claims against Defendants. [ECF 1]. Though an attorney initially entered an appearance on behalf of all Defendants, including Williams, the attorney never filed an answer. Plaintiffs subsequently filed their operative amended complaint. [ECF 15]. This matter was then placed in civil suspense pending the outcome of a settlement conference scheduled in a related matter (brought by Platypus Holdings, LLC, against the Russells). [ECF 16]. The parties did not settle and this action was removed from civil suspense. [ECF 17]. Defendants' counsel then withdrew his representation, and Defendants were allowed time to retain new counsel. [ECF 19].

On July 11, 2016, this matter was again stayed, this time, because the Taffets filed for bankruptcy protection. [ECF 20]. On November 9, 2018, this Court was advised that Plaintiffs had settled their claims against the Taffets in this matter during the bankruptcy proceedings, but that Plaintiffs' claims would proceed against the remaining defendant, Williams. [ECF 25]. The Taffets were dismissed from this action, and the matter was reopened to proceed against Williams. [ECF 26, 27]. Williams never retained counsel or responded in any way to the operative complaint. As a result, the Clerk of Court entered a default against her. Thereafter, Plaintiffs filed the underlying motion for a default judgment. [ECF 32]. Though Plaintiffs served Williams with a copy of the underlying motion, as well as with the order scheduling the hearing on the motion, Williams never filed a response and did not attend the hearing.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 55 provides a two-step process for obtaining a default judgment. *See* Fed. R. Civ. P. 55. The first step is the entry of default. *See id.* The entry of default is a ministerial task performed by the Clerk of Court upon the mere filing of a request for default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *see also Farnese v. Bagnasco,* 687 F.2d 761, 763 (3d Cir. 1982) (noting Rule 55(a) "allows the clerk to enter a default" under conditions stated in Rule). The second step is the entry of a default judgment for damages and costs. *See* Fed. R. Civ. P. 55(b). If the default judgment is properly requested and the claim is for a sum certain, the clerk will enter the default judgment. Such situations are rare, however, and "in the vast majority of cases, a judicial determination is necessary to decide the extent of the injury or the valuation of the plaintiff's loss." *Nationwide Prop. & Cas. Ins. Co. v. Janis*, 2008 WL 2762375, at *1 (M.D. Pa. July 11, 2008) (citation omitted); *see also Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). Rule 55 provides that in those situations, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

The decision whether to enter a default judgment is left to the sound discretion of the court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). When considering whether to grant a default judgment, district courts must consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d

3

Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984), as the source of the applicable factors, and affirming a court's refusal to enter a default judgment against a defendant who had filed a late answer).  A district court must accept as true the well-pleaded factual allegations of the complaint, but it need not accept the moving party's legal conclusions or factual allegations related to the amount of damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Tancredi v. Cooper,* 2003 WL 22213699, at *3 (E.D. Pa. Sept. 4, 2003) (noting that "all factual allegations of the complaint other than those pertaining to the amount of damages are to be taken as true" once a court determines that a defendant is in default).  The court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

**DISCUSSION**

As a threshold matter, this Court must determine whether Plaintiffs' operative complaint establishes legitimate causes of action.  *See Comcast Cable Commc'ns v. Bowers*, 2007 WL 1557510, at *2 (D.N.J. May 25, 2007) ("Before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action.") (citations omitted).  Here, the operative complaint alleges state law claims for fraud, breach of fiduciary duty, and unjust enrichment against Williams.[2]  The factual predicates for Plaintiffs' claims against Williams, set forth in detail in the operative complaint, are summarized as follows:

---

[2] During the hearing, Plaintiffs dropped their breach of contract claims against Williams.  They have also provided no argument with respect to any damages with respect to their aiding and abetting claim.  As such, this Court will not address these claims.

4

### Fraud—Platypus Investments (Count I)

Williams misrepresented or failed to disclose: (1) her expertise in real estate development; (2) her role in Platypus and the amount of money that she personally had invested therein; (3) the amount of time and money that Platypus would require to renovate the investment properties and either rent or sell them; (4) that she and Mr. Taffet had each been a party in previous lawsuits alleging various violations of their business commitments and agreements; (5) that she had substantial judgments entered against her; and (6) that she had filed for bankruptcy shortly before soliciting the Russells for the investments. Williams intended for the Russells to rely on these material misrepresentations/omissions in order to induce them to make significant monetary investments in Platypus. The Russells justifiably relied on these misrepresentations/omissions to their detriment by investing $3,385,522.92 in Williams's scheme, money which has never been returned or recovered.

### Fraud/Fraudulent Inducement—Woodlawn Investment (Counts II and VII)

Williams misrepresented numerous facts pertaining to the existence and/or value of a real estate investment, referred to as the Woodlawn Property, in order to induce Plaintiff Rosemary Russell to invest $160,000 in the property. Rosemary justifiably relied on these misrepresentations to her detriment by investing $160,000 in the property, an investment that was never returned or recovered.

### Fraud—Restaurant Equipment Investment (Count IX)

Williams misrepresented that Plaintiffs' Platypus account would receive a credit of $55,000 if Plaintiffs wired that amount to Williams' personal bank account for the purchase of restaurant equipment. Plaintiffs relied on this misrepresentation to their detriment by wiring the money to Williams without ever receiving a corresponding credit to their Platypus account.[3]

---

[3] Though not addressed during the hearing, it appears that this $55,000 is included in the total amount of Plaintiffs' joint investment in Platypus listed above ($3,385,522.92).

**Breach of Fiduciary Duty (Count XII)**

Plaintiffs were Class B members of Platypus. Williams was the managing partner. While serving as the managing partner, Williams misappropriated funds and assets for her own benefit, to the detriment of Platypus's members, including Plaintiffs.

**Unjust Enrichment (Count XIV)**

Plaintiffs allege that Williams (along with the Taffets) was unjustly enriched by Plaintiffs' $3,385,522.2 million investment in Platypus. The alleged damages for this claim are duplicative of those outlined above.

Accepting the factual allegations in the operative complaint as true, as this Court must, this Court finds that Plaintiffs have stated facts sufficient to support the causes of action summarized above.

This Court also finds that application of the *Chamberlain* factors weighs in favor of the entry of a default judgment. First, Plaintiffs will suffer prejudice if a default judgment is not granted, as Williams has effectively stolen Plaintiffs' entire investment in her fraudulent scheme. Second, Williams has not asserted a meritorious defense, as she has failed to respond to Plaintiffs' operative complaint and the allegations contained therein in any manner. Without the benefit of an answer, this Court cannot infer a defense. *See Einhorn v. Klayman Produce Co.*, 2013 WL 6632521, at *4 (E.D. Pa. Dec. 17, 2013). Finally, in light of her complete lack of any involvement in this matter, Williams's failure to participate in this action is "culpable conduct." *See Bricklayers & Allied Craftworkers Local 1 of PA/DE v. WaterControl Servs., Inc.*, 2012 WL 3104437, at *6 (E.D. Pa. July 30, 2012) (finding culpable conduct from defendant's failure to participate in the action). Accordingly, as consideration of the *Chamberlain* factors weighs in favor of the entry of a default judgment, this Court will grant Plaintiffs' request for a default judgment.

*Compensatory Damages*

Having found the entry of default judgment to be appropriate, this Court next turns to the amount of damages to which Plaintiffs are entitled for their claims. Fed. R. Civ. P. 55(b)(2). At

the assessment of damages hearing, Plaintiffs presented the uncontradicted testimony of Jeffrey Russell, and various documentary evidence. The evidence of record substantiated the loss of Plaintiffs' entire joint investment in Platypus; to *wit*: $3,385,522.92. Accordingly, this Court finds that Plaintiffs are jointly entitled to compensatory damages in this amount. In addition, Plaintiffs presented evidence that substantiated the loss of Rosemary Russell's entire investment in the Woodlawn Property; to *wit*: $160,000. Accordingly, this Court also finds that Plaintiff Rosemary Russell is entitled to compensatory damages in this amount.

### ***Punitive Damages***

Plaintiffs seek an additional award of punitive damages in the amount of twice the compensatory damages award. It is well-settled that a court may award punitive damages as part of a default judgment where the court held a hearing pursuant to Rule 55. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1152 (3d Cir. 1990). Punitive damages are available under Pennsylvania law for "torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured." *G.J.D. v. Johnson*, 713 A.2d 1127, 1129 (Pa. 1998) (quoting *Thompson v. Swank,* 176 A.2d 211, 211 (Pa. 1934)). The Supreme Court of Pennsylvania has noted that "the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others from similar conduct." *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989).

The "size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." *Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 419 (Pa. Super. Ct. 2004) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1241 (Pa. Super. Ct. 1998)). Punitive damages must be "both proportionate to the amount of harm to the plaintiff and to the general damages

recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003). In discussing the amount of punitive damages, the *Campbell* Court noted that "[s]ingle-digit multipliers" were ordinarily reasonable, but greater ratios have been upheld where "a particularly egregious act has resulted in only a small amount of economic damages[.]" *Id.* at 425. Pennsylvania courts consider three factors when awarding punitive damages: "(1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." *Hollock*, 842 A.2d 409, 419 (quoting *Pioneer Comm. Funding Corp. v. Fin. Mortg. Corp.*, 797 A.2d 269, 290 (Pa. Super. Ct. 2002)).

### 1. Character of the Act

The Supreme Court has stated that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Campbell*, 538 U.S. at 419 (quoting *BMW v. Gore*, 517 U.S. 559, 575 (1996)). Here, Plaintiffs placed their trust in Williams and relied on her misrepresentations and material omissions about her background and the Platypus investments. Williams abused Plaintiffs' trust and misappropriated more than $3.3 million of their savings, including portions of their retirement savings. This abuse of trust occurred over a period of more than two years.

### 2. Nature and Extent of Harm

The second factor that a court must consider is the nature and extent of the harm. Here, Plaintiffs lost the entirety of their collective $3.3 million investment, at least some of which was their retirement savings.

### 3. Wealth of Defendant

Finally, the court is to consider the defendant's wealth when awarding punitive damages. Here, due to the posture of the case, this Court has no financial information regarding Williams.

According to Plaintiffs, prior to the events underlying their claims, and unbeknownst to them at the time, Williams filed for bankruptcy protection and had judgments entered against her. Plaintiffs were unable to collect any additional information regarding Williams' net worth due to Williams's lack of participation in this matter.

Based on these factors, this Court finds that an award of punitive damages is appropriate, despite the lack of information regarding Williams's wealth. Pennsylvania courts have found that "evidence of wealth is not mandatory to establish a claim for punitive damages" and "the polestar for the [factfinder's] assessment of punitive damages is the outrageous conduct of the defendants, not evidence of a defendant's wealth." *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 215 (Pa. Super. Ct. 2003) (citing *Shiner v. Moriarty*, 706 A.2d 1228, 1241-42 (Pa. Super. Ct. 1998)). Williams should not be rewarded, nor Plaintiffs punished, for Williams's failure to participate in this action. Accordingly, this Court concludes that a punitive award equal to the compensatory damages award is sufficient to meet the goals of punishing Williams and deterring her and others from similar conduct in the future. Based on the facts alleged and deemed true, there is no question that Williams misappropriated Plaintiffs' monetary investments in an egregious manner. It is also true that Williams has never denied liability. The allegations in the operative complaint demonstrate that Williams was at least reckless, if not worse, in perpetrating her investment scheme, which specifically targeted Plaintiffs and resulted in the loss of their life savings. Thus, a punitive award equal to the compensatory damages award is appropriate.[4]

---

[4] Plaintiffs also seek an award of attorneys' fees, but have provided no legal basis for such an award on their common law tort claims. *See Local Union 30, United Union of Roofers, Waterproofers and Allied Workers v. D.A. Nolt Inc.*, 625 F. Supp. 2d 223, 233 (E.D. Pa. 2008). In addition, at the hearing, Plaintiffs sought, for the first time in this lengthy litigation, the appointment of a receiver over Platypus. This remedy was not sought in the operative complaint, and Plaintiffs have not provided any legal support for such relief under the circumstances. These additional remedies are, therefore, denied.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for default judgment is granted, and the following damages are awarded:  compensatory damages to Plaintiffs jointly in the amount of $3,385,522.92 and punitive damages to Plaintiffs jointly in the amount of $3,385.522.92 for Counts I, IX, and XII; compensatory damages to Plaintiff Rosemary Russell in the amount of $160,000.00 and punitive damages to Plaintiff Rosemary Russell in the amount of $160,000 for Counts II and VII.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.*